2010 UT 63

**CAMCO CONSTRUCTION, INC., Plaintiff and Third–Party Defendant,**

v.

**UTAH BASEBALL ACADEMY, INC., et al., Defendants, Third–Party Plaintiffs, and Appellants.**

**KeyBank National Association, et al., Defendants, Third–Party Plaintiffs, and Appellees.**

No. 20090624.

Supreme Court of Utah.

Nov. 16, 2010.

Denver C. Snuffer, Jr., Daniel B. Garriott, Bret W. Reich, Tahne L. Hamilton, Sandy, for appellants.

R. Stephen Marshall, Steven J. McCardell, Salt Lake City, for appellees.

NEHRING, Justice:

## INTRODUCTION

¶ 1 In this interlocutory appeal, Athletic Performance Institute, L.L.C., Utah Baseball Academy, Inc., and Robert Keyes (collectively, "API") ask us to overturn the district court's order, which denied API's motion to disqualify the district court judge, the Honorable Anthony Quinn, after he was exposed to confidential arbitration materials. Because we conclude that API's motion to disqualify Judge Quinn was untimely, we decline to consider the merits of the motion and accordingly, we affirm the decision of the district court.

## BACKGROUND

¶ 2 API[1] entered into a contract with Camco Construction, Inc. to build an athletic facility with an indoor baseball field, an indoor basketball court, and other amenities. In order to finance the project, API obtained a construction loan from KeyBank.

¶ 3 Problems arose during construction of the facility. API began to complain that

1. Athletic Performance Institute ("API") owns Utah Baseball Academy, Inc. ("UBA"), and Robert Keyes owns both API and UBA. These parties are collectively referred to as simply "API" throughout this opinion.

construction defects prevented the use of the indoor baseball field. Camco was unhappy because it believed that it was entitled to additional payments under the construction contract. KeyBank refused to continue funding the project because it claimed that API failed to comply with the terms of the loan.

¶ 4 In 2005, Camco sued API and KeyBank for API's failure to pay amounts due under the construction contract. It also sought to foreclose its mechanic's lien on the property. API answered, counterclaimed, and filed a third-party complaint. The counterclaims alleged that Camco breached the construction contract because it failed to complete the project on time and because its construction was defective.

¶ 5 KeyBank also answered and counterclaimed. In addition, KeyBank cross-claimed and brought a third-party complaint against API. KeyBank sought to foreclose on the building, wanted a receiver appointed, and requested a monetary judgment for any deficiency remaining after foreclosure. API counterclaimed against KeyBank. API accused the bank of breaching its contract with API, and of committing negligence, conversion, breach of fiduciary duty, and fraud. API claimed that KeyBank's refusal to fund the construction loan caused all of the disputes among the parties because had KeyBank paid Camco, the project would have been completed and the liens and litigation would have been unnecessary.

¶ 6 Camco's contract with API contained an arbitration clause and Camco demanded that it be enforced. In June 2006, Judge Quinn, the trial judge, entered an order compelling arbitration of the API–Camco claims. In April 2008, the arbitrator awarded Camco approximately $608,000. The arbitrator found that API failed to pay amounts due to Camco under the contract and that API's breach excused Camco's refusal to perform. The arbitrator did not consider KeyBank's alleged failure to fund the construction loan because KeyBank was not a party to the arbitration and did not have a contract with Camco.

¶ 7 API paid the arbitration award, and Camco and API stipulated to dismiss Camco's claims with prejudice. Judge Quinn ordered dismissal, with prejudice, of all claims between Camco and API.

¶ 8 Meanwhile, the litigation between API and KeyBank moved forward. KeyBank regularly attached as exhibits and used as evidence documents from the API–Camco arbitration, including documents, deposition testimony from the proceedings, and the April 2008 arbitration award. API objected to KeyBank's use of the arbitration materials, claiming the information was both irrelevant and prejudicial to its position in the subsequent litigation.

¶ 9 On June 22, 2009, API filed the first of three motions to disqualify Judge Quinn. API's first motion was brought under Utah Rule of Civil Procedure 63. In this motion, API argued that KeyBank violated the confidentiality provisions of the Alternative Dispute Resolution Act ("ADR Act") by disclosing arbitration materials in subsequent litigation. The motion stated that KeyBank's disclosure, when coupled with our decision in *Reese v. Tingey Construction*,[2] required Judge Quinn to immediately recuse himself from further proceedings in the case, because he had viewed confidential materials from the API–Camco arbitration. Judge Quinn denied API's motion and, as required by rule 63, referred it to Associate Presiding Judge Maughan for his review. Judge Maughan also denied API's motion.

¶ 10 On July 6, 2009, API filed a second motion seeking to amend the order denying the motion to recuse Judge Quinn under rules 59 and 60 of the Utah Rules of Civil Procedure. On July 9, Judge Maughan denied API's motion to amend because it was untimely and did not satisfy the requirements of rule 63(b). Although Judge Maughan denied the motion, he permitted API to bring another motion using only *Tingey Construction* as its grounds for disqualification. On July 14, API filed a third motion to disqualify Judge Quinn, this time based sole-

**2.** 2008 UT 7, 177 P.3d 605.

ly on *Tingey Construction*. On July 17, Judge Quinn heard argument on API's third motion to disqualify and issued an order that denied it.

¶ 11 Judge Quinn stated four reasons for denying the motion. First, Judge Quinn determined that *Tingey Construction* does not establish a per se rule requiring recusal in every case where a judge has been exposed to ADR materials. Second, Judge Quinn reasoned that *Tingey Construction* was a mediation case and its narrow holding did not extend to cases involving arbitration. Third, Judge Quinn determined that API waived any confidentiality arguments by producing arbitration materials in discovery. Finally, Judge Quinn determined that due to the hundreds of hours already spent on the case, judicial economy weighed in favor of denying API's motion. On July 22, Judge Quinn stayed the proceedings below to allow API to bring this interlocutory appeal. We have jurisdiction under Utah Code section 78A–3–102(3)(j) (Supp.2010).

## STANDARD OF REVIEW

■ ¶ 12 Whether a trial judge erred by failing to recuse himself is a question of law that we review for correctness.[3]

## ANALYSIS

■ ¶ 13 On appeal, API continues to argue that Judge Quinn erred when he declined to recuse himself after he viewed confidential information arising out of the API–Camco arbitration proceedings. In support of this claim, API makes two primary arguments: First, API argues that Utah's ADR Act requires that arbitration materials remain confidential and prohibits disclosure of these materials in subsequent litigation.

Second, API asserts that our decision in *Reese v. Tingey Construction*[4] interprets Utah's ADR Act to require a judge's recusal where information from an ADR proceeding is disclosed in subsequent litigation.

¶ 14 In response, KeyBank urges us not to reach the merits of API's disqualification motion because it was untimely filed under Utah Rule of Civil Procedure 63(b). KeyBank argues that API waited over fourteen months after KeyBank began to use arbitration materials in the litigation and almost seventeen months after *Tingey Construction* was decided to file its disqualification motion—a length of time long past rule 63's prescribed deadline.

¶ 15 We agree with KeyBank. Because API's motion to disqualify Judge Quinn was untimely under Utah Rule of Civil Procedure 63(b)(1)(B), we decline to consider the merits of API's motion and affirm the decision of the district court.

## I. API'S RULE 63(b) DISQUAL-IFICATION MOTION WAS UNTIMELY FILED

■ ¶ 16 Motions for disqualification of a judge are governed by Utah Rule of Civil Procedure 63(b). This rule governs motions for disqualification whether the text of a party's motion mentions the rule or not.[5] Under rule 63, a motion to disqualify a judge

shall be filed after commencement of the action, but not later than [twenty] days after the last of the following:

(I) assignment of the action or hearing to the judge;

(ii) appearance of the party or the party's attorney; or

(iii) the date on which the moving party learns *or with the exercise of reasonable*

---

3. *State v. Alonzo*, 973 P.2d 975, 979 (Utah 1998).

4. 2008 UT 7, 177 P.3d 605.

5. API argues that the time limitations in rule 63 do not apply to its motion for disqualification because the motion was filed under *Tingey Construction*, not under rule 63. We are unper-

suaded. Rule 63 governs motions for disqualification, regardless of the grounds asserted. Timeliness is critical to all motions to disqualify judges, and parties cannot file a motion for disqualification under another name to escape rule 63's time lines.

*diligence should have learned* of the grounds upon which the motion is based.[6]

As we have stated before, "[t]imeliness is essential in filing a motion to disqualify" because "delay imposes unnecessary disruption on both the judicial system and [the] litigants .... and it necessarily results in significant additional costs to the parties."[7]

 ¶ 17 "To be timely, a motion to disqualify should be filed at counsel's first opportunity after learning of the disqualifying facts."[8] Because an undue delay in filing a disqualification motion is costly, wasteful, and prevents the speedy resolution of matters, "[o]nly if good cause for a delay is demonstrated in the motion seeking disqualification should a delinquent motion even be considered."[9]

¶ 18 Here, because there is no question that API's motion to disqualify Judge Quinn was filed too late, and because we conclude that API has not demonstrated good cause for its filing delay, we decline to consider the merits of API's delinquent motion.[10] Judge Quinn entered an order compelling arbitration between Camco and API in June 2006. While the arbitration proceeded to conclusion, the litigation between API and KeyBank also continued. From early on in the proceedings, API was on notice that KeyBank intended to introduce and rely on confidential materials from the API–Camco arbitration; in fact, references, documents, and transcripts from the arbitration were at-tached to motions submitted to Judge Quinn on a regular basis throughout the litigation. The record is replete with examples: (1) In June 2007, KeyBank referenced the arbitration between API and Camco and listed the resulting arbitration award as a defense to API's counterclaims against KeyBank. (2) In April 2008, KeyBank attached a copy of the arbitration award as an exhibit to its motion for summary judgment. (3) Although in April 2009, API filed a motion in limine to exclude from the litigation the arbitration award and other confidential arbitration materials, API failed to mention the ADR Act or *Tingey Construction,* or as much as suggest that Judge Quinn should disqualify himself from the case. (4) In May 2009, Key-Bank filed a responsive motion that relied extensively on information and documents from the arbitration proceedings. KeyBank attached as exhibits to its memorandum the arbitrator's decision and award, as well as deposition transcripts from the arbitration proceedings. While API objected to the introduction of these arbitration materials on relevance and prejudice grounds, API waited until June 22, 2009 to file a disqualification motion, far more than twenty days after it had the grounds to do so.

¶ 19 While API concedes that it knew for some time that confidential materials from the arbitration were being introduced in subsequent litigation and that these materials were regularly attached to motions before Judge Quinn, API argues that it had good cause for delay in bringing its disqualification

6. Utah R. Civ. P. 63(b)(1)(B) (emphasis added).

7. *Madsen v. Prudential Fed. Sav. & Loan Ass'n,* 767 P.2d 538, 542 (Utah 1988).

8. *Id.* at 543.

9. *Id.* at 543.

10. *See* Utah R. Civ. P. 63(b)(1) (stating that a disqualification motion shall be filed *"not later than [twenty] days after ... the date on which the moving party learns or with the exercise of reasonable diligence should have learned of the grounds upon which the motion is based."* (emphasis added)); *see also Madsen,* 767 P.2d at 543–44 (finding a disqualification motion to be untimely when the party waited thirty-nine days after an adverse ruling before filing a motion to disqualify); *Williams v. Williams,* 2004 UT App 245U, para. 1, 2004 WL 1575584 (finding disqualification motion filed on the day of trial was untimely when the party knew a particular judge was assigned to the case months before trial and during that time had in her possession every document she needed to file the motion); *K.F. v. State (State ex rel. D.F.),* 2001 UT App 256U, para. 5–6, 2001 WL 1021092 (finding a motion for disqualification was untimely when a party waited forty-seven days after observing the questionable conduct to file her motion); *Birch v. Birch,* 771 P.2d 1114, 1116 (Utah Ct.App.1989) (holding a disqualification motion was untimely when it was filed eighty-eight days after an alleged demonstration of bias).

motion because counsel did not learn it had grounds to bring a motion until he attended a Continuing Legal Education seminar on the topic in June 2009. An affidavit from API's counsel states as follows:

> [D]uring [the CLE] I became aware that the Utah Legislature adopted the Alternative Dispute Resolution Act, including the confidentiality requirements for both arbitration and mediation proceedings.... I was also informed about the Utah Supreme Court case of *Reese v. Tingey Construction*, 2008 UT 7, 177 P.3d 605, that warned future litigants and courts to carefully observe the statutory bar to disclosing confidential information from the alternative dispute process.

API's counsel urges us to find that its disqualification motion was timely, despite being filed almost three years into the litigation, after enough proceedings had occurred to generate over forty volumes of record, and over sixteen months after *Tingey Construction* was published. API asserts that its motion was timely because API's counsel filed it within twenty days of attending a Continuing Legal Education seminar where he learned of the legal bases for filing the motion. We are wholly unpersuaded by this argument. As we stated above, rule 63 provides that a party shall file a disqualification motion *"not later than [twenty] days after* ... the date on which the moving party learns *or with the exercise of reasonable diligence should have learned* of the grounds upon which the motion is based." [11] The

responsibility to exercise reasonable diligence under this rule includes a duty to perform adequate research to determine the existence of any legal claims in a timely fashion.[12] API's ignorance of the ADR Act and of *Tingey Construction* do not constitute good cause for its extreme delay in filing its disqualification motions.

¶ 20 First, API should have been—and with the exercise of reasonable diligence would have been—aware of the Utah ADR Act.[13] The confidentiality provisions of this Act were codified in 1991 [14] and were present in the Utah Code during the entire duration of API's lengthy arbitration with Camco.[15] We find it difficult to understand how a party may competently participate as a party in an arbitration without being aware of an entire Act in the Utah Code that governs arbitration proceedings. While we do not question the truthfulness of the sworn statement of API's counsel, we find counsel's ignorance of the Act to be no excuse for API's delay in filing a disqualification motion.

¶ 21 Second, we also conclude that if API's counsel exercised the reasonable diligence required by rule 63, it should have learned of *Tingey Construction* at an earlier stage in the litigation. *Tingey Construction* was published in February 2008, over a year before API filed its first disqualification motion.[16] At this time, API was aware that KeyBank was regularly presenting Judge Quinn with arbitration materials, yet API failed to bring this case to the court's attention and has no reasonable justification for the delay. An

---

**11.** Utah R. Civ. P. 63(b)(1)(B) (emphases added).

**12.** *See Black's Law Dictionary* 523 (9th ed. 2009) (defining "reasonable diligence" as "[a] fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue"); Utah R. of Prof'l Conduct 1.3 (noting that an attorney has a professional responsibility to "act with reasonable diligence and promptness in representing a client"); *see also Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 24, 100 P.3d 1211 (interpreting the phrase "reasonable diligence" under Utah Rule of Civil Procedure 4 and noting that "[i]n order to meet the reasonable diligence requirement ... a plaintiff must take advantage of reasonably available channels of relevant information as suggested by ordinary

prudence and the particular circumstances of the case"); *Brown v. Glover*, 2000 UT 89, ¶ 37, 16 P.3d 540 (stating that an attorney's duty of reasonable diligence includes a duty to observe and act according to the deadlines prescribed in the Utah Rules of Civil Procedure).

**13.** *See* Utah Code Ann. §§ 78B–6–201 to –209 (2008).

**14.** *See* 1991 Utah Laws ch. 279, § 13.

**15.** *See* Utah Code Ann. § 78B–6–208.

**16.** 2008 UT 7, 177 P.3d 605.

attorney's failure to exercise reasonable diligence in his representation of a client is not good cause for failing to bring a timely disqualification motion and adopting such a rule would encourage inattention, inadequate representation, waste of judicial resources, and failure to perform ethical duties required by the Utah Rules of Professional Conduct.[17] Because API waited to file its motion until long after it should have known of possible grounds for disqualification, we conclude API's disqualification motion was untimely filed under rule 63(b). We thus decline to reach the merits of the motion, affirm the district court's decision to deny it, and direct Judge Quinn to proceed with the case.

## CONCLUSION

¶ 22 We conclude that API's motion to disqualify was untimely and that API has not demonstrated any good cause for its delay. Because API's motion did not meet the requirements of Utah Rule of Civil Procedure 63(b), we decline to consider the merits of API's arguments and we affirm Judge Quinn's decision to deny the disqualification motion.

¶ 23 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Judge HARMOND concur in Justice NEHRING's opinion.

¶ 24 District Judge GEORGE M. HARMOND sat.

---

**17.** *See, e.g.,* Utah R. Prof'l Conduct 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client.").